Michael A. Isaacs, State Bar No. 99782
Jeffrey L. Fillerup, State Bar No. 120543
Nhung Le, State Bar No. 209552
LUCE, FORWARD, HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.4610
E-Mail:     misaacs@luce.com
            jfillerup@luce.com
            nle@luce.com

Attorneys for Appellee JANINA M. ELDER,
Chapter 11 Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICIA ISABELLE HEWLETT,<br><br>　　　Appellant,<br><br>v.<br><br>JANINA M. ELDER, Trustee,<br><br>　　　Appellee. | Case No. 07 CV 05883 CRB<br><br>**SUPPLEMENT TO APPELLEE'S COUNTER-DESIGNATION OF RECORD ON APPEAL** |

Appellee Janina M. Elder, Chapter 11 Trustee in Bankruptcy (the "Trustee"), hereby files this Supplement to Appellee's Counter-Designation of Record on Appeal,  as follows:

On November 21, 2007, the Trustee filed in the Bankruptcy Court "Appellee's Counter-Designation of Record on Appeal."   On December 18, 2007, the Trustee filed in the Bankruptcy Court certain hearing transcripts that were noted in the Trustee's November 21, 2007 Counter-Designation, but which were not available to the Trustee to submit to the Court on November 21. Those hearing transcripts were submitted to the Bankruptcy Court on December 18.

The Trustee hereby submits this supplemental designation of certain pleadings, orders, and transcripts that were not included in the original designation dated November 21, 2007, along with copies of the pleadings, orders and transcripts designated herein.

## BANKRUPTCY COURT PLEADINGS

| DOCKET NO. | DATE FILED/DATE OF HEARING | DESCRIPTION OF DOCUMENT | DESCRIPTION OF EXHIBITS |
|---|---|---|---|
| 277 | Filed: November 19, 2007 Heard: November 29, 2007 | Notice of Motion and Motion for Relief from Order or in the Alternative for Stay of Order Pending Appeal | N/A |
| 278 | Filed: November 19, 2007 Heard: November 29, 2007 | Notice of Motion and Motion for Relief from Order or in the Alternative for Stay of Order Pending Appeal (Notice of Hearing) | |
| 279 | Filed: November 19, 2007 Heard: November 29, 2007 | Memorandum of Points and Authorities Re: Alternative Motions for Relief of Stay | N/A |
| 284 | Filed: November 26, 2007 Heard: November 29, 2007 | Opposition to Ms. Hewlett's Motion for Relief Under Rule 60(b)(3), or Motion to Stay Pursuant to Rule 8005 | N/A |
| 285 | Filed: November 26, 2007 Heard: November 29, 2007 | Declaration of Jeffrey L. Fillerup in Opposition to Ms. Hewlett's Motion for Relief Under Rule 60(b)(3), or Motion to Stay Pursuant to Rule 8005 | Exh. 1 Order Denying Petition of Writ of Mandamus |

## BANKRUPTCY COURT ORDERS

| DOCKET NO. | DATE FILED/DATE OF HEARING | DESCRIPTION OF DOCUMENT | DESCRIPTION OF EXHIBITS |
|---|---|---|---|
| 297 | Hearing: November 29, 2007 Order Entered: December 13, 2007 | Order Denying Motion for Stay Pending Appeal | N/A |

Case No. 07 CV 05883 MJJ
SUPPLEMENT TO APPELLEE'S COUNTER-
DESIGNATION OF RECORD ON APPEAL
(HEWLETT APPEAL)

**HEARING TRANSCRIPTS**

| DATE OF HEARING | DESCRIPTION OF HEARING |
| --- | --- |
| November 29, 2007 | Motion for Relief from Order or in the Alternative for Stay or Order Pending Appeal |

DATED: December 26, 2007          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
        Jeffrey L. Fillerup
        Attorneys for Appellee JANINA M. ELDER,
        Chapter 11 Trustee

301024986.1

Case No. 07 CV 05883 MJJ
SUPPLEMENT TO APPELLEE'S COUNTER-
DESIGNATION OF RECORD ON APPEAL
(HEWLETT APPEAL)

277

1

JAMES ATTRIDGE (SBN# 124003)
1390 Market Street, Suite 1204
San Francisco, CA 94102
Telephone: (415) 552-3088
Facsimile: (415) 522-0513
Email: jattridge@attridgelaw.com

Attorney for PATRICIA HEWLETT



**FILED**

**NOV 1 9 2007**

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re:

SOPHIE H.NG.

Debtor

CASE NO.06-30904

CHAPTER 11

**Notice of Motion and Motion for Relief from
Order or in the Alternative for Stay of Order
Pending Appeal**

Date: November 29, 2007
Time: 10:30 AM
Place: Courtroom 23

TO: Janina Elder, Trustee, and to Luce, Forward, Hamilton & Scripps, her counsel

of record: NOTICE IS HEREBY GIVEN THAT ON NOVEMBER 29, 2007 or as soon

thereafter as the matter can be heard in Courtroom 23 of the above-entitled court located at

235 Pine Street, San Francisco, California, Patricia Hewlett will, and hereby does move

this Court for an Order relieving her from the Turnover Order of this court issued on

September 28, 2007. In the alternative, Ms. Hewlett moves for an Order Staying the

Turnover Order of September 28, 2007 until the District Court rules on the appeal of that

order, said appeal having been filed on November 5, 2007.

Said alternative motions will be made on the grounds that the Trustee's failure to

1

1    provide notice of the motions which resulted in said order constitutes an innocent

2    misrepresentation or accidental omission warranting relief from said order pursuant to

3    FRCP 60)b)3) or 60)b)6); or that a stay is warranted by the terms of FRBP 8005.

4        This motion is based upon this notice of motion, on the memorandum of points and

5    authorities filed and served along herewith, and on the request for judicial notice of the

6    Petition for Writ of Mandamus to Vacate Order Rejecting Lease and Ejecting Petitioner

7    from the Premises and Declaration of James Attridge in Support thereof filed October 30,

8    2007 in the United States District Court and served on this Court that same date.

9    Dated November 19, 2007

10

11                                        James Attridge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# 278

1

JAMES ATTRIDGE (SBN# 124003)
1390 Market Street, Suite 1204
San Francisco, CA 94102
Telephone: (415) 552-3088
Facsimile: (415) 522-0513
Email: jattridge@attridgelaw.com

2

3

4



**FILED**

NOV 1 9 2007

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

5

Attorney for PATRICIA HEWLETT

6

7

8

UNITED STATES BANKRUPTCY COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

In Re:

CASE NO.06-30904

12

CHAPTER 11

13

14

SOPHIE H.NG.

**Notice of Motion and Motion for Relief from
Order or in the Alternative for Stay of Order
Pending Appeal**

15

16

Debtor

Date: November 29, 2007
Time: 10:30 AM
Place: Courtroom 23

17

18

19

20

TO: Janina Elder, Trustee, and to Luce, Forward, Hamilton & Scripps, her counsel

21

of record: NOTICE IS HEREBY GIVEN THAT ON NOVEMBER 29, 2007 or as soon

22

thereafter as the matter can be heard in Courtroom 23 of the above-entitled court located at

23

235 Pine Street, San Francisco, California, Patricia Hewlett will, and hereby does move

24

this Court for an Order relieving her from the Turnover Order of this court issued on

25

September 28, 2007. In the alternative, Ms. Hewlett moves for an Order Staying the

26

Turnover Order of September 28, 2007 until the District Court rules on the appeal of that

27

order, said appeal having been filed on November 5, 2007.

28

Said alternative motions will be made on the grounds that the Trustee's failure to

1

provide notice of the motions which resulted in said order constitutes an innocent

misrepresentation or accidental omission warranting relief from said order pursuant to

FRCP 60)b)3) or 60)b)6); or that a stay is warranted by the terms of FRBP 8005.

This motion is based upon this notice of motion, on the memorandum of points and

authorities filed and served along herewith, and on the request for judicial notice of the

Petition for Writ of Mandamus to Vacate Order Rejecting Lease and Ejecting Petitioner

from the Premises and Declaration of James Attridge in Support thereof filed October 30,

2007 in the United States District Court and served on this Court that same date.

Dated November 19, 2007

_____

James Attridge

# 279

1
2   JAMES ATTRIDGE (SBN# 124003)
   1390 Market Street, Suite 1204
3   San Francisco, CA  94102
   Telephone: (415) 552-3088
4   Facsimile:  (415) 522-0513
   Email: jattridge@attridgelaw.com

5   Attorney for PATRICIA HEWLETT

6

7

8                UNITED STATES BANKRUPTCY COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11   In Re:                    CASE NO.06-30904

12                       CHAPTER 11

13                     **Memorandum of Points and Authorities Re:**
                       **Alternative Motions for Relief and Stay**
14   SOPHIE H.NG.

15                    Date: November 29, 2007
                     Time: 10:30 AM
16   Debtor             Place: Courtroom 23

17

18

19

20                          **Facts**

21

22       On September 28, 2007 Court issued a turnover order which effectively barred

23   Patricia Hewlett from access to 1385 Clay Street, San Francisco, unit 3 despite the fact she

24   had signed a five year lease entitling her to occupancy through May, 2009. Notice of that

25   motion was served upon Ms. Hewlett's counsel solely by means of filing through the

26   bankruptcy court's e-filing program. Given that counsel for Ms. Hewlett was not a

27   participant in that program, this amounted to no service at all. Counsel for the Trustee had

28   always previously served Hewlett's counsel by means of mail, personal service, facsimile,

FILED

NOV 1 9 2007

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

1  or a combination of them. Counsel appeared at the hearing because other matters were set

2  to be discussed and advised the court he had not been served. The Court was unmoved and

3  granted the motion despite the explained lack of service.

4    On October 30, 2007 a petition for extraordinary relief was filed at the United

5  States District Court, which was denied because there was an insufficient showing that the

6  heightened clearly erroneous standard was satisfied.

7    On November 14, 2007 the United States Court of Appeals, Ninth Circuit ruled as a

8  matter of first impression that "justice suffers" when a motion is granted when a non-e-

9  filer served by e-filing only, and not with any sort of hard copy. *Calderon v .IBEW Local*

10  *47 No 05-56937.*

11  **Legal Standard**

12    Federal Rule of Civil Procedure 60b)3) provides that a Court should relieve a party

13  from a final order which results from the misconduct of an adverse party. FRCP 60 b)3) is

14  a remedial rule which should be liberally construed. *Rozier v. Ford Motor Company 573*

15  *F.2d 1332 (5th Cir. 1978)* The rule is aimed at judgments which are unfairly obtained, not

16  at those which are factually incorrect. *In Re: M/V Peacock on Complaint of Edwqrds 809*

17  *F.2d 1403, 1405 (9th Cir. 1987)* Misconduct under FRCP 60 b)3) embraces innocent

18  misrepresentations *United States v. One Douglas A-26B Aircraft 662 F.2d 1372,1374-1375*

19  *(11th Cir. 1981)* and accidental omissions. *Jones v. Aero/Chem Corp 921F2d 875, 879 (9th*

20  *Cir. 1990)*

21    Bankruptcy Court Rule 8005 holds that motions for stay pending appeal should be

22  granted upon a showing of a likelihood of success on the merits.

23  **Argument**

24    Viewing the evidence in the light most favorable to the non-moving party (as well

25  as the most likely) somebody made a mistake in haste and did not properly notice Ms.

26  Hewlett's counsel with Notice of the Motions to be heard on September 28, 2007.

27  Applying rule 60 b)3) as interpreted above those orders should all be vacated and the

28  motions held in abeyance until counsel for Ms. Hewlett has reviewed them and filed briefs

2

1   in opposition.

2       In light of the forceful language in *Calderon* arising in a very similar scenario the

3   likelihood that the Order will be stayed at least through a remand and directive for

4   rehearing is as certain as the next sunrise. Moreover, an examination of the authorities

5   cited to the District Court in support of the petition for writ of mandate, show that while

6   this court's order might not be clearly erroneous as a matter of law, neither is it likely to

7   stand up to de novo review.

8   November 19, 2007

9                                               _____

10                                              James Attridge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# 284

1   Michael A. Isaacs, State Bar No. 99782
    Jeffrey L. Fillerup, State Bar No. 120543
2   Nhung Le, State Bar No. 209552
    LUCE, FORWARD,
3   HAMILTON & SCRIPPS LLP
    Rincon Center II, 121 Spear Street, Suite 200
4   San Francisco, California 94105-1582
    Telephone No.: 415.356.4600
5   Fax No.: 415.356.3895
    E-mail: misaacs@luce.com
6           jfillerup@luce.com
7           nle@luce.com

8   Attorneys for
    JANINA M. ELDER, Chapter 11 Trustee

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13   In re                      Case No. 06-30904 TEC

14   SOPHIE NG,              Chapter 11

15           Debtor.       Hon. Thomas E. Carlson

16                   **OPPOSITION TO MS. HEWLETT'S**
                         **MOTION FOR RELIEF UNDER RULE**
17                         **60(b)(3), OR MOTION TO STAY**
                         **PURSUANT TO RULE 8005**
18
                         Date:  November 28, 2007
19                          Time:  10:00 a.m.
                         Place:  235 Pine Street
20                                   Courtroom 23
                                  San Francisco, CA
21

22

23

24

25

26

27

28

                                              Case No. 06-30904 TEC
                         OPPOSITION TO MS. HEWLETT RULE 60(b)(3)
                          MOTION TO SET ASIDE ORDER

1    Chapter 11 Bankruptcy Trustee Janina M. Elder ("Trustee") hereby opposes Patricia

2  Hewlett's  motion for relief from the Court's September 28, 2007 order under Federal Rule of

3  Civil Procedure 60(b)(3), or in the alternative, motion to stay under Bankruptcy Rule 8005, as

4  follows:

5  **I.    MS. HEWLETT HAS NOT  SATISFIED  THE REQUIREMENTS OF  RULE**
   **60(b)(3)**
6

7    On August 3, 2007, the Court heard and granted the Trustee's motion to sell an asset of the

8  bankruptcy estate, a 24-unit apartment located at 1385 Clay Street, San Francisco, California (the

9  "Clay Property"), under Section 363(f). (Fillerup Decl., par. 2)   Ms. Hewlett opposed the

10  Trustee's 363(f) motion, her counsel appeared at the August 3 hearing, and the Court granted the

11  Trustee's motion to sell the property notwithstanding Ms. Hewlett's opposition and objection.

12  (Fillerup Decl., par. 3)

13    At hearings on  September 14,  2007 and September 21, 2007, the Court granted the

14  Trustee's request for approval to  sell the Clay Property to A.J. Batt for $4.6 million (the "Batt

15  Sale").  (Fillerup Decl., par. 3)   Ms. Hewlett's counsel appeared at both hearings  and opposed

16  the  proposed sale to Mr. Batt.    The Court approved the sale notwithstanding Ms. Hewlett's

17  opposition and objection.    The Batt Sale included a condition that the Trustee obtain an order

18  removing Ms. Hewlett from the Clay Property.  (Fillerup Decl., par. 3)

19    On September 19, 2007, the Trustee filed a motion to remove Ms. Hewlett from the Clay

20  Property.    This motion was made in order to satisfy a condition of the Batt Sale.  Ms. Hewlett's

21  counsel appeared at the September 28, 2007 hearing of the motion to remove Ms. Hewlett from

22  the Clay Property and opposed the motion. (Fillerup Decl., par. 5)   Ms. Hewlett's opposition

23  was overruled, and the Court granted the Trustee's motion and ordered Ms. Hewlett  to vacate the

24  premises and turn over possession of the Clay Property to the Trustee (the "September 28 Order").

25  The Court issued an order that day, and Ms.  Hewlett's counsel was served with the September 28

26  Order that day,  September 28, 2007.  (Fillerup Decl., par. 5)

27    Seven weeks later, after the Trustee had already sold the Clay Property to Mr. Batt,  Ms.

28  Hewlett filed this motion seeking an order setting aside the September 28 Order based on Federal

1   Rule of Civil Procedure 60(b)(3).  (Fillerup Decl., par. 8)   Ms. Hewlett's  Rule 60(b)(3) motion

2   should be denied for several reasons.

3       First,  the motion is not timely.   While there is a one-year statute of limitations for filing

4   a motion under Rule 60(b)(3),  a motion should be denied  as untimely even if it is filed within the

5   one-year period when the motion could have been made earlier and if the opposing party will be

6   prejudiced by the tardy filing.  *In re Leisure Corp.,*  2007 U.S.Dist.Lexis 16231 (N.D. Cal. 2007);

7   *Immerson Corp. v. Sony Computer Ent. America Inc.,*  2006 U.S.Dist.Lexis 13697 (N.D. Cal.

8   2006).  In this case, Ms. Hewlett could have filed the motion before the Trustee sold the Clay

9   Property.  Now that the Trustee has sold the Clay Property, the Trustee no longer owns the

10  property and the Trustee is not able to return possession of the property to Ms. Hewlett.

11  Furthermore, the Trustee and creditors would be  prejudiced if the Batt Sale could be reversed by

12  returning possession of the property to Ms. Hewlett (which is not possible at this point).

13      Second,  Federal  Rule 60(b)(3)  requires that the moving party prove fraud by the

14  opposing party by "clear and convincing" evidence.  *Immerson Corp. v. Sony Computer Ent.*

15  *America Inc.,*  2006 U.S.Dist.Lexis 13697 (N.D. Cal. 2006).  A party moving for relief under

16  Rule 60(b)(3) must: "(1) prove through clear and convincing evidence that the verdict was

17  obtained through fraud, misrepresentation, or other misconduct [and]  (2)  establish that the

18  conduct complained of prevented the losing party from fully and fairly presenting his case or

19  defense."   Ms. Hewlett has failed to adduce evidence of  either requirement.   She has not

20  produced evidence of fraud.   She has not produced evidence that she would have prevailed if she

21  had offered a complete opposition to the Trustee's motion.   In order to satisfy the second

22  requirement, Ms. Hewlett must submit proof that her opposition to the Trustee's motion to remove

23  Ms. Hewlett  would  have been successful, which she has not done.

24      Third,  a court should not set aside an order because of  mistakes or  poor judgment by the

25  moving party.  *E.g., Latshaw v. Trainer Wortham & Co., Inc.,*  452 F.3d 1097 (9th Cir. 2006).

26  In this case, Ms. Hewlett failed to move for reconsideration of the September 28 Order, or to

27  appeal the September 28 Order in a timely manner,  or to seek an immediate stay of the order.

28  Instead of filing a notice of appeal  within the required 10-day period,  Ms. Hewlett filed a

1    complaint against the Trustee with the San Francisco Rent Control Board, (Fillerup Decl., par. 9),

2    which was an improper procedure and a violation of the automatic bankruptcy stay.    That

3    complaint was dismissed by the Rent Control Board soon after it was filed.  Ms. Hewlett then

4    filed a petition for a writ of mandamus with the District Court.  The writ petition asked the

5    District Court to overrule the September 28 Order because there had been insufficient service of

6    the Trustee's motion.    On October 31, 2007, Judge Breyer issued an order denying  Ms.

7    Hewlett's writ petition. (Fillerup Decl., Ex. 1)    After failing to file a timely notice of appeal and

8    after seeking relief from the Rent Control Board and the District Court, Ms. Hewlett has returned

9    to this Court for relief.  This Court should not grant Ms. Hewlett's relief because she erred in

10   seeking relief from tribunals that would not or could not provide the relief she sought.

11          In conclusion, Ms. Hewlett's motion should be denied because  (i) she has failed to satisfy

12   the grounds for relief under Rule 60(b)(3),   (ii) the Trustee and creditors would be prejudiced by

13   Ms. Hewlett's delay in setting aside the September 28 Order,  and (iii)  the Trustee is unable to

14   restore possession of the Clay Property to Ms. Hewlett because the Clay Property has been sold to

15   Mr. Batt and the Trustee no longer has possession of the property.

16   **II.**    **MS. HEWLETT HAS NOT ESTABLISHED THE REQUIREMENTS FOR A STAY**

17          **A.**    **Ms. Hewlett Cannot Establish Irreparable Harm**

18          The September 28 Order became effective immediately when it was entered on September

19   28, 2007.    Ms. Hewlett did not seek to stay the order at the time of the hearing on September 28,

20   2007, and she never sought a stay from this Court until November 16, 2007, when Ms. Hewlett's

21   counsel filed a motion to stay the order. (Fillerup Decl., par. 8)   By the time Ms. Hewlett had

22   filed this  motion to stay the September 28 Order, the Trustee has already closed on the sale of the

23   Clay Property to Mr. Batt. (Fillerup Decl., par. 8)

24          According to Bankruptcy Rule 8005,  a motion to stay an order issued by the Bankruptcy

25   Court should first be made to the Bankruptcy Court.  The Bankruptcy Court evaluates the merits

26   of a motion to stay under the same standards applicable to a motion for a preliminary injunction.

27   *Oakland Tribune, Inc. v. Chronicle Publishing Co.,*  762 F.2d 1374, 1376 (9th Cir. 1985).    The

28   "motion for stay" standard is identical to the standard for assessing whether a preliminary

1  injunction should issue.    *In re PGE,*  2002 U.S.Dist. Lexis 27549 (N.D. Cal. 2002).    That is, the

2  moving party must establish that she will suffer irreparable harm if the stay is not issued.  *Id.*    If

3  the moving party establishes irreparable harm, then the Bankruptcy Court will determine whether

4  the moving party has established a likelihood of success on the merits,  and whether the non-

5  moving party will be harmed by the proposed stay order.  If the moving party fails to establish the

6  first part of the test by not establishing irreparable harm, then  the court "need not decide whether

7  [movants are] likely to succeed on the merits."  *Oakland Tribune, Inc. v. Chronicle Publishing*

8  *Co.,*  762 F.2d 1374, 1376 (9th Cir. 1985);  *Pon v. Silicon Valley Bank,*  1994 U.S.Dist.Lexis 2559

9  (N.D. Cal. 1994).

10  Here, Ms. Hewlett has not established that she will suffer irreparable harm unless a stay is

11  issued.  Ms. Hewlett cannot satisfy this part of the "motion to stay" test because by the time Ms.

12  Hewlett first asked this Court to stay the September 28 Order the Trustee had already sold the

13  Clay Property to Mr. Batt. (Fillerup Decl., par. 8)

14  Also,  Ms. Hewlett cannot show irreparable injury because the Court has allowed her to

15  seek money damages from the Trustee based on her proof of claim.    When money damages are

16  available, then irreparable harm cannot be established as a matter of law.  *E.g., L.A. Memorial*

17  *Coliseum Commission v. NFL,*  634 F.2d 1197 (9th Cir. 1980).

18  Because Ms. Hewlett cannot show irreparable harm, the motion to stay should be denied

19  and the Court need not consider the other aspects of the "motion to stay" test.

20  **B.    Ms. Hewlett Cannot Establish a Likelihood of Success on the Merits**

21  Even if Ms. Hewlett could establish irreparable harm, her motion to stay should be denied

22  because she cannot establish a likelihood that she would prevail on the merits of her appeal to the

23  District Court.  *Mount Graham Coalition v. Thomas,*  89 F.3d 554 (9th Cir. 1996)(motion for stay

24  denied when it failed to raise serious questions on the merits).    Ms. Hewlett will not prevail on

25  her appeal for several reasons, which are discussed in the sub-sections below.

26  **1.    An Appeal of the September 28 Order is Untimely**

27  Pursuant to Bankruptcy Rule 8001,  the notice of appeal from a Bankruptcy Court order

28  must be filed within 10 days from the Bankruptcy Court's entry of the order.  In this case, Ms.

1  Hewlett's time to appeal expired on October 9, 2007, which was 10 days after the entry of the

2  September 28 Order.   The 10-day period for filing a notice of an appeal from a Bankruptcy Court

3  order is jurisdictional, and the 10-day time period is strictly construed.  If the filing deadline is not

4  satisfied, the untimely appeal will be dismissed because the district court will lack jurisdiction to

5  hear the appeal.  *See, e.g., Morn v. Strauss,* 1996 U.S.Dist.Lexis 12021 (N.D. Cal. 1996).

6      Ms. Hewlett cannot show a likelihood of success on the merits of her appeal because the

7  appeal will be dismissed as untimely.   Ms. Hewlett did not file her notice of appeal until

8  November 5, 2007,  over one month after entry of the September 28 Order.

9      **2.**      **Judge Breyer's Order is Law of the Case**

10      Instead of filing a timely  notice of appeal of the September 28 Order, Ms. Hewlett chose

11  to file a petition for a writ of mandamus in the District Court.   Judge Breyer denied the petition

12  and in so doing he found that Ms. Hewlett had actual notice of the hearing and was present at the

13  hearing on September 28.  (Fillerup Decl., Ex. 1)   Judge Breyer, like this Court, rejected Mr.

14  Attridge's claim that he did not have actual notice of the September 28 hearing.   Judge Breyer's

15  ruling  is res judicata and law of the case.   Ms. Hewlett sought to obtain relief via a writ of

16  mandamus, rather than a notice of appeal, and she is now bound by the order issued by Judge

17  Breyer.   Even if Ms. Hewlett had filed a timely notice of appeal,  her argument that she did not

18  have notice has been decided against her on the merits and she cannot relitigate that issue.  *See,*

19  *e.g., Kirshner v. Uniden,*  842 F.2d 1074, 1078 (9th Cir. 1988)(the prior denial of a petition for

20  writ of mandamus can  have res judicata effect  if the denial is on the merits).

21      **3.**      **Equitable Mootness Precludes Ms. Hewlett from Prevailing on Appeal**

22      An appeal from a Bankruptcy Court order  will be dismissed based on the concept of

23  equitable mootness when  the appellant failed and neglected diligently to pursue her available

24  remedies to obtain a stay of the contested order.  *E.g.,  Trone v. Roberts Farms, Inc.,*  652 F.2d

25  793 (9th Cir. 1981).   In this case, the District Court will dismiss Ms. Hewlett's appeal based on

26  the doctrine of equitable mootness because  Ms. Hewlett failed to take steps to stay the September

27  28 Order until after the sale to Mr. Batt had already closed.

28      In light of the likelihood that the District Court will dismiss Ms. Hewlett's appeal based on

1  equitable mootness, the motion to stay should be denied.

2  **4.  Constitutional Mootness Precludes Ms. Hewlett from Prevailing on Appeal**

3

4  The doctrine of constitutional or real mootness applies when "an event occurs while a case

5  is pending appeal that makes it impossible for the court to grant 'any effectual relief.'"  *National*

6  *Mass Media v. Stanley,* 152 F.3d 1178, 1180 (9th Cir. 1998), citing and quoting *Church of*

7  *Scientology v. United States,* 506 U.S. 9, 12 (1992).  In this case, in spite of the fact that the order

8  removing Ms. Hewlett from the property was entered seven weeks ago, Ms. Hewlett never took

9  any action to stay the order until November 19, 2007.  During that seven-week period, the Trustee

10  relied on the September 28 Order in proceeding with the sale of the Clay Property to Mr. Batt and

11  closing on the sale to Mr. Batt.    The sale closed on November 16, 2007,  the secured creditors

12  were paid on November 16,  back property taxes were paid on November 16, and the costs of the

13  sale were paid on November 16.    Mr. Batt has taken over possession of the property.  Mr. Batt

14  now owns the property.    Based on the real mootness doctrine,  the District Court will likely

15  dismiss Ms. Hewlett's appeal because it is impracticable, if not impossible, to undo the sale that

16  has already taken place.

17  **5.  There was Actual Notice of the September 28 Hearing**

18  In denying Ms. Hewlett's petition for a writ of mandamus, Judge Breyer has already ruled

19  that Ms. Hewlett had actual notice of the motion to remove her from the Clay Property and her

20  counsel was present at the hearing.   In addition, the record on appeal will show that Mr. Attridge

21  had received notice at the hearings on September 14 and September 21 that the Trustee would be

22  filing her motion to remove Ms. Hewlett from the property and that the motion had been filed on

23  September 19, 2007.    Ms. Hewlett's "lack of notice" objection was based on her lawyer's

24  intentional avoidance of the motion, rather than a real case of lack of notice.  This case is different

25  from the cases cited by Ms. Hewlett in which there was a genuine lack of notice.  Ms. Hewlett's

26  lawyer was in attendance at the hearing on September 28 because he had actual notice of the

27  hearing and the motion.  He simply chose not to review the Trustee's motion in order to assert a

28  technicality as an objection.

1

        **6.**     **Ms. Hewlett Lacks Standing to Appeal the November 2 Order**

2           On November 2, 2007, the Court entered an order removing Javier Rivera from the Clay

3  Property.  (Fillerup Decl., par. 11)  This order cannot be the basis of a successful appeal by Ms.

4  Hewlett for several reasons.  First, the November 2 Order relates to Mr. Rivera only.  It does not

5  relate to Ms. Hewlett in any respect, and it does not alter the terms of the September 28 Order in

6  any material way relating to Ms. Hewlett.  As a result, the November 2 Order does not allow Ms.

7  Hewlett to have another bite at an appeal of the September 28 order.  *See, e.g., In re Lahtinen*,

8  2004 U.S.Dist.Lexis 2604 (N.D. Ill. 20040; *In re Dow Corning*, 2002 U.S.Dist.Lexis 6484 (E.D.

9  Mich. 2002).  Second, Ms. Hewlett has no standing to appeal the November 2 order because she

10  has no pecuniary interest in that order.  *E.g., Fondiller v. Robertson*, 707 F.2d 441, 443 (9th Cir.

11  1983); *Lynch v. California PUC*, 2004 U.S.Dist.Lexis 6022 (N.D. Cal. 2004).  Third, neither Ms.

12  Hewlett nor Mr. Rivera have standing to appeal the November 2 Order because they did not file a

13  timely opposition to the Trustee's motion to remove Mr. Rivera and they did not appear at the

14  November 2, 2007 hearing and oppose the Trustee's motion to remove Mr. Rivera from the Clay

15  Property.  (Fillerup Decl., par. 11)    *E.g., Lynch v. California PUC*, 311 B.R. 798, 2004

16  U.S.Dist.Lexis 13808 (N.D. Cal. 2004)("Federal courts agree that, to have standing to bring a

17  bankruptcy appeal, appellants must have attended the bankruptcy court proceedings and timely

18  objected to the order.").

19     **C.**     **A Stay Order Would Prejudice Creditors and the Estate**

20         Even if Ms. Hewlett could establish irreparable harm and a likelihood of success on the

21  merits (which she has not done), then the motion to stay should be denied because a balancing of

22  hardships does not favor granting the stay.   In this case, the secured creditors have relied on the

23  proposed sale of the Clay Property to Mr. Batt and they have relied on the fact that the Batt Sale

24  would pay the debt secured by the Clay Property.   The closing of the Batt Sale produced funds

25  sufficient to pay secured creditors and it would be unfair to them now, after they have relied on

26  the pendency of the sale, if Ms. Hewlett were permitted to unravel the sale.   It would also be

27  harmful to the estate to force the Trustee to go through the long and expensive process of re-

28  selling the Clay Property, particularly in light of the increased costs and difficulty that Ms.

1 Hewlett has already caused the Trustee in concluding the Batt Sale.

2     **D.**   **Unclean Hands Support Denial of Ms. Hewlett's Motion to Stay**

3       There are several other factors that the Court should take into account in denying Ms.

4 Hewlett's motion to stay. First, Ms. Hewlett did not seek to address her claimed lack of notice in

5 a timely manner. Second, Ms. Hewlett has failed to comply with the September 28 Order. She

6 has repeatedly violated the order by entering the Clay Property after the order was issued. It

7 appears from Ms. Hewlett's conduct in violating the September 28 Order with impunity that this

8 motion and the effort at an untimely appeal of the September 28 Order is more of a protection

9 against contempt proceedings than it is an effort to undo the order itself. Third, Ms. Hewlett has

10 violated the automatic stay by filing a complaint with the San Francisco Rent Control Board after

11 the September 28 Order issued. Fourth, Ms. Hewlett has violated the Court's accounting order

12 by failing to provide a complete accounting of income and expenses relating to the Clay Property

13 on or before November 7, 2007. Fifth, Ms. Hewlett violated the Court's September 28 and

14 November 2 orders when she entered the Clay Property on November 7, 2007 to change the lock

15 on unit #3. In light of the circumstances, Ms. Hewlett's claim for equitable relief in the form of

16 a stay of the September 28 Order should be denied based on her own misconduct.

17 **III.**   **CONCLUSION**

18       Based on the foregoing, Ms. Hewlett's motion for relief under Federal Rule of Civil

19 Procedure 60(b)(3) should be denied, and her alternative motion for a stay under Bankruptcy

20 Rule 8005 should be denied.

21 DATED: November 26, 2007     LUCE, FORWARD, HAMILTON & SCRIPPS LLP

22

23                       By: _____

24                         Jeffrey L. Fillerup
                        Attorneys for JANINA M. ELDER,
                        Chapter 11 Trustee

25

26

27 301022434.1

28

**285**

Michael A. Isaacs, State Bar No. 99782
Jeffrey L. Fillerup, State Bar No. 120543
Nhung Le, State Bar No. 209552
LUCE, FORWARD,
HAMILTON & SCRIPPS LLP
Rincon Center II, 121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone No.: 415.356.4600
Fax No.: 415.356.3895
E-mail:  misaacs@luce.com
         jfillerup@luce.com
         nle@luce.com

Attorneys for
JANINA M. ELDER, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 06-30904 TEC |
| SOPHIE NG, | Chapter 11 |
| Debtor. | Hon. Thomas E. Carlson |
| | **DECLARATION OF JEFFREY L. FILLERUP IN OPPOSITION TO MS. HEWLETT'S MOTION FOR RELIEF UNDER RULE 60(b)(3), OR MOTION TO STAY PURSUANT TO RULE 8005** |
| | Date:  November 28, 2007<br>Time:  10:00 a.m.<br>Place:  235 Pine Street<br>Courtroom 23<br>San Francisco, CA |

I , Jeffrey L. Fillerup, declare as follows:

1.     I am a partner in the law firm of Luce, Forward, Hamilton & Scripps LLP.  We are counsel for Janina M. Elder, the duly appointed Chapter 11 Trustee (the "Trustee") in this case, and  I have personally been involved in the proceedings in this case regarding the proof of claim filed by Patricia Hewlett,  the Trustee's objection to the proof of claim,  the Trustee's adversary proceeding against Ms. Hewlett and Mr. Sierra, and Ms. Hewlett's objection to the sale of the 1385 Clay Property to A.J. Batt.   This declaration is submitted in opposition to Patricia Hewlett's motion for a stay, filed on November 19, 2007.   I have personal knowledge of the facts in this declaration, except where otherwise stated, and I could and would testify thereto if called upon to do so.

2.     On August 3, 2007, this Court heard the Trustee's motion, under Section 363(f), for leave to sell an asset of the bankruptcy estate in this case, a 24-unit apartment building located at 1385 Clay Street, San Francisco, California (the "Clay Property").   Patricia Hewlett had filed an opposition to the Trustee's motion.   The Court granted the Trustee's motion and authorized the Trustee to sell the Clay Property free and clear of liens and interests, including Ms. Hewlett's claim that she was entitled to specific performance of an alleged contract under which she had an option to purchase the Clay Property.   The Court entered an order granting the Trustee's motion on August 20, 2007.

3.     Thereafter, the Trustee entered into a contract to sell the Clay Property to A.J. Batt for $4.68 million, less a credit of $80,000 relating to certain tenant issues.   The contract required as a condition to closing that the Trustee remove Patricia Hewlett from the Clay Property.   At a hearing on September 14, 2007,  the Court authorized the sale of the Clay Property to Mr. Batt, but allowed Ms. Hewlett an opportunity to present an overbid by Monday, September 17.  Ms. Hewlett's attorney, James Attridge, was present at the September 14 hearing. Ms. Hewlett presented a bid to the Trustee on September 17, 2007, but the bid was not accepted by the Trustee. During a follow-up hearing on September  21, 2007, Ms. Hewlett's attorney, James Attridge, appeared and objected to the Trustee's proposed sale of the Clay Property to Mr. Batt.  The Court overruled Ms. Hewlett's objection to the sale of the property to Mr. Batt, and the Court issued an

1  order on October 1, 2007 overruling Ms. Hewlett's objection and allowing the sale to Mr. Batt to

2  proceed.

3      4.    During the hearing on September 14, 2007, the Court set a date (September 19) for

4  the Trustee to file her motion to remove Ms. Hewlett from the Clay Property.  Mr. Attridge was

5  present at this hearing.  The Trustee's motion to remove Ms. Hewlett from the Clay Property was

6  filed on September 19, 2007, and the hearing was set for September 28, 2007.  The Trustee's

7  motion to remove Ms. Hewlett from the Clay Property (filed on September 19) was also discussed

8  during the course of the September 21, 2007 hearing in this matter, which was attended by Mr.

9  Attridge.  The Trustee's motion to remove Ms. Hewlett was set for hearing on September 28,

10  2007, which was the hearing date set by the Court during the hearing on September 14.

11      5.    Mr. Attridge appeared at the hearing on September 28, 2007.  At the hearing, the

12  Court granted the Trustee's motion to remove Ms. Hewlett from the Clay Property.  The Court

13  issued an order that day, and I served the order on Mr. Attridge on September 28, 2007 (the

14  "September 28 Order").

15      6.    Mr. Attridge has never asked me for a copy of the motion to remove Ms. Hewlett,

16  which I caused to be e-filed on September 19, 2007.  Mr. Attridge never informed me that he did

17  not have a copy of the motion to remove Ms. Hewlett.  If Mr. Attridge had called me or emailed

18  me that he did not have the motion to remove Ms. Hewlett, I would have immediately faxed or

19  emailed the motion to him.  Because I never heard from Mr. Attridge, I did not have any reason to

20  believe that he did not have the motion to remove Ms. Hewlett.  Mr. Attridge had told me in the

21  past that he was able to obtain pleadings that were e-filed from other lawyers.  Even though

22  Mr. Attridge still claims to have never seen the motion, he has still never asked me for a copy of

23  the motion.

24      7.    The time period for Ms. Hewlett to file a notice of appeal of the September 28

25  Order expired on October 9, 2007.

26      8.    After Ms. Hewlett's counsel was served with the September 28 Order, Ms. Hewlett

27  did not file a notice of appeal within the 10-day period, and Ms. Hewlett did not seek

28  reconsideration of the September 28 Order.  Also, Ms. Hewlett never sought to stay the

1   September 28 order until filing this motion to stay on November 19, 2007, seven weeks after

2   being served with the September 28 Order.    Once the September 28 Order was issued, the

3   Trustee and her counsel undertook to close on the sale of the Clay Property to Mr. Batt as quickly

4   as possible.    On November 16, the Trustee and the Trustee's broker advised me that the  sale to

5   Mr. Batt closed on November 16, 2007 and the secured creditors  were paid from the proceeds of

6   the sale, the costs of the sale were paid, and the remaining proceeds were paid to the Trustee.

7   Ms. Hewlett filed this motion to stay  the September 28 Order  after the sale of the  Clay Property

8   to Mr. Batt  had closed.

9          9.        After the September 28 Order was issued and served,  Ms. Hewlett did seek relief

10   from other tribunals after the September 28 Order was issued and served.  Ms. Hewlett filed a

11   complaint against the Trustee with the San Francisco Rent Control Board, alleging that the Trustee

12   had improperly evicted Ms. Hewlett.    That complaint was dismissed by the San Francisco Rent

13   Control Board  based on its determination that it lacked jurisdiction because the Clay Property was

14   subject to the jurisdiction of the Bankruptcy Court.  Ms. Hewlett also filed a petition for a writ of

15   mandamus in the United States District Court for the Northern District of California seeking a writ

16   setting aside the September 28 Order.    Ms. Hewlett's  petition was denied by Judge Breyer

17   pursuant to an order issued on October 31, 2007.  Attached hereto as Exhibit 1 is Judge Breyer's

18   October 31, 2007 order denying Ms. Hewlett's petition for a writ of mandamus.

19          10.      Ms. Hewlett's  claim that I  have committed fraud in connection with the Trustee's

20   motion to remove Ms. Hewlett from the Clay Property is false.    I was present in Court and Mr.

21   Attridge was present in Court on September 14, 2007 and September 21, 2007, when the Trustee's

22   motion to remove Ms. Hewlett from the Clay Property was discussed and the hearing date for that

23   motion was set for September 28, 2007.    Mr. Attridge appeared in court on September 28, 2007

24   and claimed at that time that he had not received the motion.  Mr. Attridge never advised me

25   before September 28 that he had not received the motion.  If he had, I would have faxed the

26   motion to him immediately.  It appears from the circumstances that while Mr. Attridge had actual

27   notice of the Trustee's motion and the September 28, he failed to request the motion in order to

28   create a technical objection to the Trustee's motion.  Mr. Attridge's conduct is supported by the

Case No. 06-30904 TEC
DECLARATION OF JEFFREY L. FILLERUP IN
OPPOSITION TO MS. HEWLETT'S
MOTION FOR RELIEF

1  fact that Mr. Attridge  did obtain the proof of service of the Trustee's motion in order to support

2  his attack on the September 28 Order, but he did not obtain the motion itself so that he could

3  "claim" that he has never seen the Trustee's motion.

4        11.    On October 26, 2007, the Trustee e-filed a  motion to  remove Javier  Rivera

5  (Patricia Hewlett's brother)  from the Clay Property, and set the hearing of the motion  for

6  November 2, 2007. The Court had granted the Trustee's  application for an order shortening time

7  to allow this motion to be heard on shortened time because the removal of Mr. Rivera was

8  necessary in order to close on the sale of the Clay Property to Mr. Batt.    The Trustee's  motion

9  was also  served on Ms. Hewlett's counsel (James Attridge)  and Mr. Rivera by fax and U.S. Mail

10  on October 26, 2007.  I appeared at the hearing of the motion to remove Mr. Rivera from the Clay

11  Property on November 2, 2007.  Neither Mr. Rivera  nor Mr. Attridge appeared at the hearing to

12  oppose the motion.  The Court granted the motion to  remove Mr. Rivera from the Clay Property

13  on November 2, 2007 and the Court entered an order removing Mr. Rivera from the Clay Property

14  that same day.    I served Mr. Attridge and Mr. Rivera with the November 2, 2007 order that same

15  day.

16        I declare under penalty of perjury under the laws of the United States that the above

17  statements are true and that if called as a witness I could and would testify to their truthfulness.

18  This declaration was executed on the 26th day of  November,  2007 in San Francisco, California.

19

20                                      Jeffrey L. Fillerup

21

22

23    301022438.1

24

25

26

27

28

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRICIA HEWLETT,

        Plaintiff,

    v.

UNITED STATES BANKRUPTCY
COURT,

        Defendant.

_____/

No. C 07-05532 CRB

**ORDER DENYING PETITION FOR
WRIT OF MANDAMUS**

Patricia Hewlett petitions this Court for a writ of mandamus vacating the Bankruptcy Court's order mandating that Hewlett vacate the premises at 1385 Clay Street, Apartment 3 in San Francisco, California. The petition is DENIED.

"The remedy of mandamus is a drastic one, to be involved only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402 (1976). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." Will v. United States, 389 U.S. 90, 95 (1967). Put simply, this case does not present the kind of "exceptional" or "extraordinary" situation that warrants mandamus relief.

For a mandamus petition to be granted, the plaintiff must demonstrate that the lower court clearly erred as a matter of law. See Douglas v. United States District Court, 495 F.3d 1062, 1066 (9th Cir. 2007). In this case, mandamus is inappropriate because it is not at all

United States District Court
For the Northern District of California

1   clear that the Bankruptcy Court erred when it ordered that Hewlett vacate the 1385 Clay

2   Street premises.

3          As at least one circuit court has concluded, § 363(f) of the Bankruptcy Code

4   authorizes bankruptcy courts to allow the sale of a debtor's property unencumbered by a

5   lessee's possessory interests, despite the terms of another section of the code, § 365(h),

6   which generally protects a lessee's rights upon rejection of a lease.  See Precision Indus., Inc.

7   v. Qualitech Steel SBQ, LLC, 327 F.3d 537 (7th Cir. 2003).  While the issue remains

8   unsettled in this circuit, the bankruptcy court's conclusion that it had authority to sell the

9   1385 Clay Street property free and clear of Hewlett's possessory interest cannot be deemed

10  "clearly erroneous."

11         Hewlett argues that the bankruptcy court clearly erred because she did not have proper

12  notice of the trustee's motion to remove her from the property.  As an initial matter, it is

13  unclear to this Court how Hewlett's attorney attended the hearing if he had not received

14  notice.  Regardless, local bankruptcy court rules provide that electronic notice, which was

15  indisputably sent to Hewlett's counsel, constitutes effective service of all notices governed

16  by Federal Rules of Bankruptcy Procedure 7005 and 9022.  See N. Dist. of Cal. Bankr. Ct.

17  L.R. 9013-3(c).  Perhaps Hewlett believes that Local Rule 9013-3(c) contravenes the federal

18  due process clause, but that is far from clear to this Court.

19         Hewlett also argues that the bankruptcy court's order was clearly erroneous because it

20  conflicts with local landlord/tenant law.  It is a well-established principle that pursuant to the

21  Supremacy Clause, federal law trumps state and municipal laws that "interfere with, or are

22  contrary to" it.  Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211 (1824).  The notion that a

23  bankruptcy judge cannot act under a provision of the bankruptcy code because it would

24  conflict with San Francisco's Tenant's Rights Ordinance is a non-starter.

25  ///

26

27

28

2

1    Because Hewlett has not established that the bankruptcy court clearly erred as a matter

2    of law, the mandamus petition is DENIED.

3    **IT IS SO ORDERED.**

4

5

6    Dated: October 31, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

**297**

Entered on Docket
December 13, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: December 13, 2007

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re                                    )  Case No. 06-30904 TC
                                         )
SOPHIE H. NG,                            )  Chapter 11
aka SOPHIE HA NG,                        )
aka SOO HA NG,                           )
aka SOPHIE HA NG LUM,                    )
                                         )
                                         )
                    Debtor.              )
_____)

ORDER DENYING MOTION FOR STAY PENDING APPEAL

    The court held a hearing on November 29, 2007 on the motion of
Patricia Hewlett for a stay pending appeal of this court's
September 28, 2007 order requiring her to turn over possession of
the real property known as 1385 Clay Street, San Francisco,
California (the Property).  Jeffrey L. Fillerup appeared for the
chapter 11 trustee, Janina M. Elder (Trustee).  James Attridge
appeared for Ms. Hewlett.

    Upon due consideration, and for the reasons stated on the
record and in the accompanying memorandum, the court hereby orders
that the motion is denied.

**\*\*END OF ORDER\*\***

1

**<u>Court Service List</u>**

2

3

4   Jeffrey Fillerup, Esq.
    Luce, Forward, Hamilton and Scripps
    121 Spear Street, Suite 200
5   San Francisco, CA 94105

6   James Attridge, Esq.
    Scopelitis, Garvin, Light and Hanson
7   1390 Market Street, Suite 1204
    San Francisco, CA 94102-5306

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# 11-29-07
# Hearing
# Transcript

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 06-30904-TEC |
| | ) Chapter 11 |
| SOPHIE H. NG, | ) |
| | ) <u>MOTION for STAY</u> |
| Debtor. | ) <u>PENDING APPEAL</u> |
| | ) |
| | ) |
| JANINA M. ELDER, Chapter 11 | ) Adv. 07-03071 |
| Trustee, | ) |
| | ) <u>MOTION to COMPEL PRODUCTION</u> |
| Plaintiff, | ) <u>of DOCUMENTS and INITIAL</u> |
| | ) <u>DISCLOSURE INFORMATION</u> |
| v. | ) |
| | ) |
| PATRICIA ISABELLE HEWLETT, | ) |
| REGULO CUBILLOS SIERRA, | ) |
| | ) |
| Defendants. | ) Thursday, November 29, 2007 |
| | ) San Francisco, California |

<u>Appearances</u>:

| | |
|---|---|
| For Janina M. Elder,<br>Chapter 11 Trustee: | Jeffrey L. Fillerup, Esq.<br>Luce, Forward, Hamilton & Scripps LLP<br>121 Spear Street, Suite 200<br>San Francisco, California 94105<br>(415) 356-4600 |
| For Patricia Hewlett: | James Attridge, Esq.<br>1390 Market Street, Suite 1204<br>San Francisco, California 94102-5306<br>(415) 552-3088 |
| Digital Court<br>Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Jane L. Galvani<br>235 Pine Street, 23rd Floor (94104)<br>Post Office Box 7341<br>San Francisco, California 94120-7341<br>(415) 268-2366 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services<br>1948 Diamond Oak Way<br>Manteca, California 95336-9124 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*Motion for Stay Pending Appeal*                                    2

1   Thursday, November 29, 2007                    10:21 o'clock a.m.

2                      P R O C E E D I N G S

3          THE COURT:  Good morning.  Have a seat.

4          MR. FILLERUP:  Jeffrey Fillerup for the Chapter 11

5   Trustee Janina Elder.

6          MR. ATTRIDGE:  James Attridge for Patricia Hewlett.

7          THE COURT:  Okay.  Let's talk about the discovery

8   first.  You were to go over to the unit, take everything out.

9   Did that were out?

10          MR. ATTRIDGE:  I went over there for two hours, the

11  Tuesday before Thanksgiving.  Was told by Mr. Batt I had to

12  leave at 5:15 because he had a previous appointment.  I was

13  under the impression that he was under the impression that I was

14  a overdressed moving man, that I was just going to box

15  everything up and get out of there.

16          What I was there to do was to go through the documents

17  to determine what was to be produced and what we needed for the

18  accounting.  Quite frankly, it's about, I would have to estimate

19  about a five-hour job, and I was given two hours.  And it was

20  never rescheduled.  And apparently — I got a letter yesterday

21  saying that Mr. Batt intends to box everything up and store it

22  someplace, which of course frustrates my ability to do what you

23  had ordered.  So that's where we stand on the discovery.

24          MR. FILLERUP:  Well, —

25          THE COURT:  How much is there?  Did you go along?

1          MR. FILLERUP:  Well, that's not really accurate.  What

2     happened was at the last hearing on November 16, I indicated

3     that the Trustee would make an effort to arrange with Mr. Batt

4     so that Mr. Attridge would have access to Unit Number 3 at the

5     property.

6          We obtained access for Mr. Attridge on November 20 at

7     three o'clock.  And Mr. Attridge —

8          THE COURT:  That was Tuesday, yeah.

9          MR. FILLERUP:  That was Tuesday.  And Mr. Attridge had

10    a two-block — two-hour block of time.  He ended up removing some

11    of the documents, but there were still about ten — ten boxes of

12    documents left.  And Mr. Attridge did not want to allow any

13    further access back to Unit Number 3 by Mr. Attridge or by the

14    Trustee —

15         THE COURT:  You mean Mr. Batt.

16         MR. FILLERUP:  Mr. Batt, right, did not want to allow

17    any further access.  Mr. Batt felt like he had given access and

18    Mr. Attridge hadn't removed the documents.

19         So I was able to negotiate earlier this week with Mr.

20    Batt for my office to go into that unit, box up all of the

21    documents.  And I have all of the documents from that unit,

22    about ten boxes, at my doc- — at my office that are sealed.  So

23    we — in about a half an hour someone from my office boxed up all

24    the documents in there and was out.  So all the documents are

25    out of Unit Number 3 now.

*Motion for Stay Pending Appeal*                                    4

1    THE COURT:  Is there anything else left In Unit Number

2    3?

3    MR. FILLERUP:  There — there is furniture and

4    clothing.  And we've asked Mr. Attridge if that belongs to Ms.

5    Hewlett and he hasn't responded.  We don't know who it belongs

6    to.  So the Trustee is just going to move — move that property

7    out and store it.

8    MR. ATTRIDGE:  So, in other words, what they did is in

9    violation of your order.  I was supposed to go over there, go

10   through the documents.  You have to remember that there are all

11   kinds of documents in that apartment that have nothing to do

12   with this case, that are not in the least bit responsive.  Some

13   of them, quite frankly, are none of my business.

14   One of the things we were in search of were receipts,

15   cash receipts so we can do the accounting.  It takes a long time

16   to determine whether or not something — some things look like

17   receipts but aren't.  But what we agreed to do on the 16th, I

18   was not given the time or the effort to.  And Mr. Batt

19   apparently has now appointed himself judge in the case.

20   THE COURT:  Are you ready to turn these over?

21   MR. FILLERUP:  I — as soon as my office obtained those

22   documents, I wrote Mr. Attridge a letter telling him I had the

23   documents and he should have them picked up from my office.  So

24   they've been available to Mr. Attridge for the last two days.

25   And I want him to pick them up because I don't want them.

1   They're —

2          THE COURT:  The Trustee has only — the only interest

3   the Trustee is asserting is one of being able to see some of

4   these as appropriately-discoverable evidence?

5          MR. FILLERUP:  Well, it is also — in addition to that

6   it's a part of the sale where the Trustee had agreed to vacate

7   Unit Number 3 —

8          THE COURT:  Yeah, the Trus- — the debtor is not — the

9   Trustee is not asserting any proprietary interest in those

10  documents.

11         MR. FILLERUP:  Oh, no.  And —

12         THE COURT:  So just turn them over to — to Mr.

13  Attridge.

14         MR. FILLERUP:  It may be that we are entitled to have

15  those produced, but I don't know what's in them.

16         THE COURT:  But as evidence?

17         MR. FILLERUP:  Correct.  I don't —

18         THE COURT:  Your only interest is — it's the same as

19  if it was owned by General Motors.  They might be evidence.

20         MR. FILLERUP:  It may be evidence.  I assume there's

21  some documents that should be produced in the adversary

22  proceeding, but I haven't looked at the documents so I don't

23  know.

24         THE COURT:  And you're not seeking to copy them at

25  this point, you're just going to —

*Motion for Stay Pending Appeal*                                    6

1          MR. FILLERUP:  No.

2          THE COURT:  — let him produce?

3          MR. FILLERUP:  No one in my office has looked at them

4  and I haven't looked at them.

5          MR. ATTRIDGE:  It's still her property and a lot of

6  this is stuff — ongoing sales she's involved in.

7          THE COURT:  Well, why don't you just pick up the

8  boxes?

9          MS. HEWLETT:  (Indecipherable.)

10          MR. ATTRIDGE:  Because I didn't know about this

11  until —

12          MS. HEWLETT:  (Indecipherable.)

13          MR. ATTRIDGE:  — about a day and a half ago.

14          And it's — the other thing is the representation —

15  first of all, on the 16th you brought up the subject of — or Mr.

16  Fillerup brought up the subject of getting Mrs. Hewlett out.

17  And what you said at that time was:  Well, we'll cross that

18  bridge when we come to it, or:  We'll deal with it later; all

19  we're going to deal with now is the documents.  And you came up

20  with the — your solution, which I followed and they didn't.

21          In the interim or on the 16th the representation was

22  made that the building had been sold, that it had been conveyed.

23  And Mr. Fillerup has informed me today that they have collected

24  money, they've paid money.  So as of right now we have —

25          THE COURT:  Has it closed, has title transferred?

*Motion for Stay Pending Appeal*                                      7

1          MR. FILLERUP:  Yes.  Yeah, and when we were here on

2    November 16 I had indicated that the closing process had started

3    the day before and — and that morning, the morning of the 16 —

4    16th, the —

5          THE COURT:  Okay.

6          MR. FILLERUP:  — the documents were recorded and it

7    closed that morning.

8          MR. ATTRIDGE:  So —

9          THE COURT:  So you want — does she want her furniture?

10         MR. ATTRIDGE:  She wants the unit.

11         MS. HEWLETT:  I want (indecipherable).

12         MR. ATTRIDGE:  She has —

13         THE COURT:  We've already dealt with that.  Do you

14   want your furniture?

15         MR. ATTRIDGE:  Yes, she wants the furniture.  She also

16   wants the unit back, which is the basis of the request for stay

17   which is what is scheduled for today.

18         MR. FILLERUP:  And so that's what this is all about.

19   Mr. Attridge didn't remove the documents.  Ms. Hewlett won't

20   remove the furniture because she wants to continue to assert the

21   right to possession of the unit.

22         THE COURT:  Okay.

23         MS. HEWLETT:  (Indecipherable.)

24         THE COURT:  Now let — will you quit muttering back

25   there, please?  You have counsel.  Let your counsel speak.

1  You're out of order.

2          I looked at your motion, read your motion for stay.

3  What — what doesn't — what isn't set forth in your motion that I

4  can see is, you know, even assuming that your — you didn't have

5  the ability to argue at that hearing on the turnover, that you

6  should have had, you didn't get the kind of notice that you

7  should have had, clearly you had some notice, you didn't say how

8  it all would have been different.

9          MR. ATTRIDGE:  Actually —

10          THE COURT:  In other words, what is the — you know,

11  Judge Breyer addressed the merits of it, basically saying, you

12  know, it really turns on whether 365(h) applies.  Is there

13  something more than 365(h) or your idea that — that somehow the

14  Bankruptcy Court is limited by rent control ordinances in San

15  Francisco.

16          Now let me say one more thing.  Mr. Fillerup, this is

17  not law of the case.  Judge Breyer's decision is not law of the

18  case because the question here is a stay pending appeal, which

19  is a discretionary equitable remedy and the matter Judge Breyer

20  decided was a question of mandamus, which is a much, much higher

21  threshold.  So that — it's law of the case of mandamus, I guess,

22  at the District Court level, but this is a different question.

23  It's like a question of collateral estoppel, the issue is not

24  the same.

25          I mean all the — all the findings of — conclusions of

1    law he made would have equal force, but the finding itself that

2    no relief should be granted on mandamus does not decide the

3    question of whether a stay pending appeal should be granted.

4            MR. ATTRIDGE:  Right.  And what he ruled was that he

5    noted that there was — well, that the — at one point he said,

6    well, the local efiling rule might violate due process, but that

7    doesn't mean that it rises to the level of an abuse of

8    discretion by the Bankruptcy Court.  And also that —

9            THE COURT:  Well, I think he said it didn't violate

10   due process.

11           MR. ATTRIDGE:  He left it — he worded is this not a

12   very curious way, as is his want.

13           THE COURT:  It was — it was a very funny decision, as

14   Judge Breyer often is.

15           MR. ATTRIDGE:  He's a funny a fellow, yeah.

16           THE COURT:  Funny in the sense of being very witty.

17           MR. ATTRIDGE:  Yes.  But the other thing he pointed

18   out was, and this is — this is important, this answers your

19   question that you posed.  It would have been different because

20   the weight of authority says that a leasehold is not

21   extinguished by a turnover order.  But that this Court did not

22   abuse its discretion, because there's a Seventh Circuit case

23   which goes the other way applying Indiana law.  'So there's a

24   colorable argument there, therefore I can't grant extraordinary

25   relief.'

*Motion for Stay Pending Appeal*                                          10

1          If this were to go up *de novo* review, I believe that

2   the weight of authority would compel the District Court to

3   follow the District Court decision in Alaska and also the

4   *Millennium Bank* case in which a California court of appeals

5   applied California law, which does apply here.  And I actually

6   rather strongly disagree with what Judge Breyer concluded here,

7   which I thought was actually a throw-away argument, just for the

8   sake of saying something else witty, but that in *Butner versus*

9   *United States*, a unanimous decision of the U.S. Supreme Court,

10  says very clearly that these issues have got to be analyzed by

11  applying state law.  And, you know, *Gibbons versus Ogden*

12  notwithstanding, which was not a supremacy-clause cause, anyway.

13  I don't know why he relied on it.  That's an interstate-clause

14  cause.

15          So it would have been different and the reason why it

16  would have been different is the argument is spelled out in the

17  writ itself, which I incorporated by reference.

18          And the weight of authority just says a turnover order

19  and the sale does not extinguish a person's right to the

20  leasehold.  Right on the nose.

21          THE COURT:  Well, a sale, the turnover order was — a

22  sale of a piece of real property, —

23          MR. ATTRIDGE:  Right.

24          THE COURT:  — doesn't not distinguish — does not

25  extinguish a lease on the property.

1          MR. ATTRIDGE:  Right.  And that's — that's all we're

2    talking about here —

3          THE COURT:  Of which — of which the — of which the

4    purchaser has notice at least, constructive or actual notice.

5          MR. ATTRIDGE:  Oh, certainly.

6          THE COURT:  I mean you could have a BFP, I suppose,

7    but this isn't a BFP situation.

8          MR. ATTRIDGE:  Yeah.  He certainly had notice of it

9    because he's the one who made it a contingency of the sale, —

10         THE COURT:  Yeah.

11         MR. ATTRIDGE:  — which, by the way, was also a

12   violation of your order —

13         THE COURT:  But the holds — it's all very different

14   under 363(f).  And what 363(f) does, it says if an interest, and

15   a lease is an interest in land, is in dispute, it's in bona fide

16   dispute, the trustee can sell as if that interest can sell free

17   of that interest.  That interest doesn't exist.  It's something

18   that's totally irrelevant to state law.  State law does not have

19   such a similar procedure.

20         And 365(h) deals only with a situation, to the extent

21   you're relying on that, where the debtor simply rejects the

22   lease, where the lease would otherwise be valid but for the

23   rejection, and the rejection is just simply — it's a breach by

24   the debtor which cannot be enforced by specific performance, in

25   which the breach is turned into a claim for monetary damages but

1  there is a breach.  And that lease would otherwise — I'm sorry.

2  (Coughing.)  There's nothing that makes the lease unenforceable

3  or invalid.  363(f) is something entirely different.

4          MR. ATTRIDGE:  The — the authorities make the point

5  that these are actually — these two provisions are in conflict

6  and that one has to trump the other ultimately.

7          THE COURT:  They aren't in conflict because they

8  address different situations.

9          MR. ATTRIDGE:  Well, —

10         THE COURT:  363 — if a property is just sold under

11 363(b), the purchaser takes it *cum onere*, with all the baggage

12 and garbage attached to it, —

13         MR. ATTRIDGE:  Right.

14         THE COURT:  — okay?

15         MR. ATTRIDGE:  Including this case —

16         THE COURT:  That's why — for instance, the

17 prototypical situation for a sale of property free and clear is

18 where there is a lien on the property that's in dispute.  Let's

19 say the property is sold for $500,000, there's a $300,000 lien

20 that's in dispute, —

21         MR. ATTRIDGE:  Right.

22         THE COURT:  — genuine dispute.  The trustee can convey

23 the property.  The lien attaches to the proceeds.  And the

24 purchaser gets clear title, even though the lien has not been

25 paid.  Basically it transfers the claim from the property itself

1  to the proceeds and that's what happened here.

2          The claim in this — even though it's a claim in real

3  property that would otherwise be unique and enforceable by

4  specific performance, the bankruptcy law allows that to be

5  transferred to the proceeds and converted into a monetary claim.

6  And that's what was done here.

7          MR. ATTRIDGE:  As —

8          THE COURT:  The turnover was simply ancillary to the

9  fact that for — for purposes of transferring this property the

10 property was being transferred without that lease.  That lease

11 no longer was an encumbrance on the property.  It was an

12 encumbrance on the proceeds of sale.  And that's what makes it

13 so very different from nonbankruptcy law and it's what makes it

14 very different from 365(h).

15         MR. ATTRIDGE:  The problem with that is, I understand

16 the point you're making insofar as it applies to the sale of the

17 building, okay.  But our point is that we're only arguing here

18 about her right to that leasehold, not the big leasehold, the

19 little leasehold, the Unit 3 leasehold.

20         THE COURT:  Yeah.

21         MR. ATTRIDGE:  Okay.  And —

22         THE COURT:  Which was all part of the transfer —

23         MR. ATTRIDGE:  Okay.  What I don't understand —

24         THE COURT:  — to — to —

25         MR. ATTRIDGE:  — about that analysis —

1          THE COURT:  — from the debtor to the — to Ms. Hewlett

2    that was subject to the — the claim of abuse.

3          MR. ATTRIDGE:  What I don't understand —

4          MS. HEWLETT:  (Indecipherable.)

5          MR. ATTRIDGE:  — about that, though, that argument is

6    how do you conclude that extinguishing this five-year leasehold

7    is somehow monetarily compensable?

8          THE COURT:  Because under the Bankruptcy Code things

9    which are — would otherwise give right to an equitable remedy

10   are, in the definition of a claim, turned into monetary claims.

11         MR. ATTRIDGE:  I don't see how one could fix a

12   monetary amount on it as a remedy.  It just doesn't...

13         THE COURT:  Well, that may be a problem you have in

14   proving the claim.

15         MR. ATTRIDGE:  Right.

16         THE COURT:  But the point is that the trustee under

17   363(f) is given this power, which is really extraordinary, it

18   doesn't exist that I know of in state law or elsewhere in

19   federal law, to basically say there is a dispute here, the

20   trustee needs to liquidate property that's subject to the

21   dispute.  The trustee may sell the property and transfer the

22   claims to the proceeds.  'We'll figure out the dispute later.

23   We're selling it first.'

24         MR. ATTRIDGE:  I understand that.  I still don't

25   understand how you tie the lease into it.  But I mean it's — you

*Motion for Stay Pending Appeal*                    15

1    know, —

2           THE COURT:  Because the motion to sell free and clear

3    included all her interests in the —

4           MR. ATTRIDGE:  Okay.

5           THE COURT:  — in that property, not just the lease

6    option but the lease.

7           MR. ATTRIDGE:  Well, I take it then —

8           THE COURT:  Well, —

9           MR. ATTRIDGE:  — I'd have to take my shot elsewhere.

10          Now there's another issue here —

11          THE COURT:  But just to round this out, by the way.

12   The — so the property when the sale closed, pursuant to the

13   363(f) sale order, — has that been appealed, by the way?

14          MR. ATTRIDGE:  The sale order?

15          THE COURT:  Yeah.

16          MR. FILLERUP:  No, the sale order was not appealed.

17          THE COURT:  Okay.  So that property would have been

18   conveyed — is it Mr. Batt, is that the purchaser?

19          MR. FILLERUP:  Yes.

20          MR. ATTRIDGE:  Yes.

21          THE COURT:  It would have been conveyed when the sale

22   closed free and clear of all interests of hers, leasehold,

23   option to purchase, everything else.

24          The — the turnover, getting her out of the property

25   before the closing, was basically an order issued under 105, the

1   All Writs Statute, simply to facilitate that sale, to anticipate

2   the final, the result that would have happened because it

3   appeared to be an impediment to the actual closing of a sale

4   that was authorized under 363(f) and 363(b).

5          MR. FILLERUP:  And that's correct, because Mr. Batt

6   absolutely refused —

7          THE COURT:  Yeah.

8          MR. FILLERUP:  — to close —

9          THE COURT:  Right.

10         MR. FILLERUP:  — with — without Ms. Hewlett being

11  removed from the property.

12         THE COURT:  So, anyway, —

13         MS. HEWLETT:  (Indecipherable.)

14         THE COURT:  Okay.  So, you know, I — I'm — I'm much

15  more sensitive than you think to the question of making sure you

16  have an adequate time to make an argument.  That's why I'm

17  asking you today what the argument is, but I don't think the

18  argument works because of this extraordinary power of the

19  trustee under 363(f).  And the — given that that order is final

20  and that order would have upon closing given Mr. Batt title free

21  and clear of all interests, leasehold and otherwise of Ms.

22  Hewlett, this — the turnover was simply an interim remedy

23  pursuant to an order which had already been issued regarding the

24  sale.

25         MR. ATTRIDGE:  Well, to get back to the original

1   question —

2           THE COURT:  Yeah.

3           MR. ATTRIDGE:  — actually, it's an extremely difficult

4   question to answer as to how things would have been different,

5   because I don't know what argument I would have made because I

6   have never seen the motion that I would have been arguing

7   against.

8           THE COURT:  Well, you know, —

9           MR. ATTRIDGE:  So I at least should be given the shot.

10  I mean I can understand you saying, well, you know, like it's an

11  offer of proof kind of an idea.  It's like, well, what would —

12  what would you come up with, but I really can't give you an

13  answer to that.

14          THE COURT:  Did you look in the file?

15          MR. ATTRIDGE:  What?

16          THE COURT:  I mean you obviously showed up at the

17  hearing.

18          MR. ATTRIDGE:  Again, I want to get to that.

19          THE COURT:  You obviously had actual knowledge of it,

20  if not formal notice.

21          MR. ATTRIDGE:  No, not — I disagree with that.  I have

22  — and I want to go into that.

23          THE COURT:  Okay.  But the point is that had you had

24  no notice of this and you would come back here and say you

25  should vacate your order, you should — under Rule 60(b) you

1   should tell me why that order is wrong.  And I think it's

2   incumbent upon you in this situation to — to show that it was

3   wrong.  And the motion for sale free and clear and the motion

4   for turnover are all in the file.

5          When you made this motion, you know, to — the current

6   motion, for instance, you could tell me why it's wrong.  And

7   you're not — it's not hidden from you the basis under which this

8   was made.

9          MR. ATTRIDGE:  Well, I have never seen it to this very

10  day.

11         THE COURT:  Well, that doesn't mean you couldn't have

12  seen it —

13         MR. ATTRIDGE:  And I want to get back to this — I want

14  to get back to this notice issue, because I think it's extremely

15  unfair in some of the assumptions that are being made about me

16  personally.

17         And that is that on November 16th we had scheduled a

18  hearing on a motion to compel as well as a promised motion for

19  partial summary judgment, which Mr. Fillerup did not file.  On

20  previous occasions —

21         THE COURT:  November 16th.  I mean this year — this

22  month.

23         MR. ATTRIDGE:  Right.  On previous occasions I had

24  received letters saying, you know, your client's in default and

25  if you don't do such-and-such we're going to file so-and-so.

1   Sometimes he did, sometimes he didn't.  And over the course of

2   the last 20 years, many attorneys on the other side have told me

3   they were going to file motions, and they didn't.

4           My assumption was he did the same thing I did, which

5   was go to the library, look up the law and figure out that he

6   was wrong, and he didn't file it.

7           The only reason I showed up on the 28th is because I

8   double-checked the calendar to see if it was still on calendar —

9           THE COURT:  Which date are we talking about now?

10          MR. ATTRIDGE:  The 28th.

11          THE COURT:  Of what?

12          MR. ATTRIDGE:  September.

13          THE COURT:  Okay.  But you were talking about November

14  16th a minute ago —

15          MR. ATTRIDGE:  Yeah, but that was just as an example

16  of a fact that people say they're going to file motions and then

17  don't do it, which is what I assumed happened on the 28th.

18          And the only reason I showed up on the 28th is because

19  it was still on the calendar and I know that just from your

20  style, from having been here before, you kind of like to turn

21  everything into a little bit of status conference and see, you

22  know, how we're going to proceed.  And at that point in time we

23  were still in flux about what the schedule on the calendar was

24  going to be like.  I assumed it was just going to be a mini case

25  management conference.  And instead I got sandbagged.

1                And I really don't think in that circumstance that —

2                THE COURT:  Was that the date of the turnover or the

3    sale?

4                MR. ATTRIDGE:  That was a turnover order.

5                THE COURT:  Yeah.

6                MR. ATTRIDGE:  Yeah.  No, I — I have no argument to

7    make about the sale, —

8                THE COURT:  Okay.

9                MR. ATTRIDGE:  — about the — the earlier order

10   approving sale —

11               THE COURT:  Let me — let me go back to one thing.

12   Whatever happened in the past that sale, once it closed,

13   extinguished all interest of hers in the property.

14               MR. ATTRIDGE:  Well, I think as a matter of law it

15   didn't, so.

16               THE COURT:  Well, but that's only under your argument

17   under 363 —

18               MR. ATTRIDGE:  Right.

19               THE COURT:  — 365(h)?

20               MR. ATTRIDGE:  Yes.

21               THE COURT:  Okay.

22               MR. ATTRIDGE:  And that's —

23               THE COURT:  But the — I think 365(h) applies only if

24   there is a valid lease.  The court in that order, which has not

25   been appealed, stripped that off the property.  I think as a

1  practical matter the turnover is moot because the debtor doesn't

2  have any interest in that property to which he can be restored

3  at this point.

4       MR. FILLERUP:  We never made a motion under 365

5  either.  We never requested a rejection of the lease and there

6  was never an order —

7       THE COURT:  Well, but the order says it's 363(f).

8       MR. FILLERUP:  That's right.  We —

9       THE COURT:  And that order has not been appealed from.

10      My point is I think this is moot because the — once

11 the sale — this was an interim remedy only.  And once the sale

12 closed, her leasehold was — was gone.

13      MR. ATTRIDGE:  You know, actually I disagree with

14 that.  I think that the —

15      THE COURT:  Well, —

16      MR. ATTRIDGE:  — the leasehold remains in effect and

17 that we now have a jurisdictional problem in the sense that that

18 building is no longer an asset of the bankruptcy estate, only

19 the proceeds are.  And I don't know — and, frankly, I don't know

20 my core or noncore law very well, so I would have to go running

21 to the library.  But it seems at this point in time the issue of

22 whether or not her stuff can be removed is something that's

23 going to have to be determined in a different forum, because I

24 don't think now that the building is no longer an asset of the

25 estate, that the question of evicting her or the question of

1   whether or not they have converted her possession inside the

2   unit —

3          THE COURT:  She doesn't have an interest in —

4          MR. ATTRIDGE:  — is core to this proceeding.

5          THE COURT:  I think the question of jurisdiction is a

6   little different than you think.

7          MR. ATTRIDGE:  Okay.

8          THE COURT:  Her interest in the unit has been

9   terminated by the 363(f) order.  She has abandoned property in

10  that unit.  She left it there and she no longer has an interest

11  in the unit.  You need to get relief to get it out of there.  I

12  do think I have ample grounds for jurisdiction of giving you the

13  right to get the property out of there because Mr. Batt

14  basically requested this relief.

15         And I think it's — it's implicit in the order at his

16  request that she being removed from the premises upon the

17  approval of the sale free and clear, she being removed to avoid

18  from interfering with the sale, she has to be given the right to

19  get her property out.  And I will — I will make sure that that

20  right, if it's exercised reasonably and fairly, in other words,

21  if you do it the right way and don't just try to muck up the

22  process here, she'll get her furniture back.  I'm not going to

23  allow any gameplaying, though.  There's been so much gameplaying

24  going on.

25         Okay.  Let me — let me just say this.  I'm going to —

*Motion to Compel in the Adversary*                                    23

1   I'm going to issue a written order that will explain this a

2   little more — explain this in writing as well as what I've said

3   here, denying the request for stay.

4           I want to let you know that in addition to basically

5   finding that the matter is functionally moot, that they — no

6   real argument of any persuasion has been made that the — you

7   know, that that relief couldn't have been granted, that I

8   wouldn't grant a stay pending appeal in any event because I

9   don't think this party has done equity.  And I mean she has

10  interfered with the bankruptcy process left and right, and I

11  don't think a stay pending appeal of this would be appropriate

12  just on grounds of — I wouldn't grant equitable relief of that

13  sort to a person who's acted that way.

14          MR. ATTRIDGE:  Well, I —

15          THE COURT:  And it will be detailed in the order.

16          Now with respect to the motion to compel —

17          MR. FILLERUP:  May I — may I make one comment about

18  that?  And it relates to law of the case, and I just — you have

19  indicated your view on that argument.  And I think eventually,

20  because there are these appeals pending and these appeals will

21  eventually end up with Judge Breyer, he will end up making that

22  call, —

23          THE COURT:  Yeah.

24          MR. FILLERUP:  — but my argument is that even on just

25  a normal appeal, this Court's factual findings are subject to a

1   clear abuse standard.  And that clear abuse or clear air

2   standard is the same standard in connection with a petition for

3   writ of mandamus.  And so that's why I was making the argument

4   that it's law of the case.  And that's the argument I'll make to

5   Judge Breyer when he eventually gets all of this.

6           THE COURT:  But what I'm getting at is a stay pending

7   appeal can be granted without a clear showing of, you know, that

8   you're definitely entitled to prevail in law on the merits.  You

9   can do it as a matter of preserving the status quo during the

10  appeal as a matter of equity.

11          Whereas mandamus requires that there be, you know,

12  quite clear legal error in what has been done.  I think it's a

13  higher threshold with respect to whether the resulting situation

14  is legally erroneous.  In other words, ambiguous situations can

15  give rise to a stay pending appeal.  Ambiguous situations do not

16  give rise to mandamus.

17          And I don't — I'm not quarreling with anything Judge

18  Breyer said, obviously.  I thought it was, you know, very, very

19  well done.  I'm just saying that I don't think that decides

20  whether a stay pending appeal should be granted because it's

21  simply a different standard with respect to that ultimate

22  result.

23          So I will issue a written order.

24          With respect to the motion for — to compel, I think

25  that what you need to do is pick up the boxes.  And then, you

1  know, I will give you, you know, a limited period of time to

2  finish the production.  Now you haven't gotten the boxes yet.

3  There may have been some confusion as to why that's so.  I'm not

4  holding you responsible for that.  But, you know, these are the

5  documents that belong to Ms. Hewlett.  And there's no reason why

6  you shouldn't take them.  And then, you know, make — make — then

7  you have the material to complete your response.

8          So I think we just need to pick a date to pick them up

9  and the date to make the response.

10          MR. FILLERUP:  The boxes are at my office —

11          THE COURT:  They can pick them up any time, right?

12          MR. FILLERUP:  — and they can pick them up this

13  morning.

14          THE COURT:  Why don't we just pick a date for the

15  response and you can pick them up when you want, as long as you

16  just let him know.  Ten boxes probably won't fit — what kind of

17  car do you have?

18          MR. ATTRIDGE:  This is also not a good time for me to

19  be doing that, if only because my annual Christmas party is on

20  Saturday and —

21          THE COURT:  Well, then why don't you pick them up —

22          MR. ATTRIDGE:  — I will not be working the next day

23  and a half.

24          THE COURT:  Why don't you pick them up Monday; will

25  that were?

1           MR. ATTRIDGE:  I'm just trying to —

2           THE COURT:  Where's your office again?  You're in Mill

3    Valley, right?

4           MR. ATTRIDGE:  No, no.  I'm —

5           THE COURT:  You're in the city, okay.

6           MR. ATTRIDGE:  I'm at Civic Center.

7           THE COURT:  So you're at — okay, Civic Center.

8           MR. ATTRIDGE:  And it wouldn't —

9           THE COURT:  And where are you folks?

10          MR. FILLERUP:  I'm down by the Ferry Building.  Rincon

11   Center, near the Ferry Building.

12          THE COURT:  Okay.

13          MR. ATTRIDGE:  Yeah.  I mean I have to go by with a

14   car.  I may have to make a few trips on the subway.  I don't

15   know how I'm going to do it.  She may drive me over, probably

16   most likely.

17          THE COURT:  Okay.  It sounds like — 20 boxes would fit

18   in a van or SUV, or something like that probably.  These are

19   regular —

20          MR. FILLERUP:  They're —

21          THE COURT:  — regular document boxes, just —

22          MR. FILLERUP:  They're — they are ten boxes and they

23   fit in my car with —

24          THE COURT:  Ten boxes?

25          MR. FILLERUP:  Ten boxes.

*Motion to Compel in the Adversary*                                        27

1            THE COURT:  Oh, okay.

2            MR. FILLERUP:  Yeah.  And they fit in my car, so —

3            THE COURT:  And what do you have?

4            MR. FILLERUP:  I just — I have a small Audi.

5            THE COURT:  Okay.  All right.  Well, I'm sure you

6    could get like a six in a normal trunk and then some in the

7    backseat, so.

8            MR. ATTRIDGE:  Well, if I have to make two trips I'll

9    make two trips.

10           THE COURT:  Okay.  So why don't you do it Monday.  And

11   then —

12           MR. ATTRIDGE:  Which will make me an overdressed

13   moving man.

14           THE COURT:  You can send somebody from your office.

15   I'm not making you do it personally.

16           All right.  And then how about the production:  Two

17   weeks from tomorrow.

18           MR. FILLERUP:  Okay.

19           THE COURT:  Now what day is that?  I don't want to...

20           MR. FILLERUP:  December 14.

21           THE COURT:  Is that okay?  I think that makes sense.

22           MR. ATTRIDGE:  I think 14 is a Saturday, isn't it?

23           THE COURT:  No, the 14th is a Friday.

24           MR. ATTRIDGE:  A Friday, okay.

25           THE COURT:  Friday.  Somebody wanted me to do a trial

1    on the 15th, a Saturday.  We declined.  A complicated case

2    involving people who had to travel from New York.

3            MR. FILLERUP:  And at the last hearing on November 16

4    the Court issued an order as to the Sierra part of the motion to

5    compel.  And the Court indicated —

6            THE COURT:  Is this Mr. Sierra?

7            MR. SIERRA:  Yes.

8            THE COURT:  Okay.

9            MR. FILLERUP:  The Court indicated that Mr. Sierra

10   should produce documents by December 13.  And I suggest that we

11   just amend the Court's order from November 16 to give Mr. Sierra

12   until December 14 also, to comply with the order —

13           THE COURT:  I understand you're kind of doing this

14   together.

15           MR. ATTRIDGE:  We have obtained documents from him, —

16           THE COURT:  Okay.

17           MR. ATTRIDGE:  — which we believe are responsive —

18           THE COURT:  Okay.

19           MR. ATTRIDGE:  — to the request.

20           THE COURT:  Well, why don't I just give you — so

21   there's no reason why they couldn't be done by the 14th.

22           MR. ATTRIDGE:  That he would — yes.

23           MR. SIERRA:  I sent a summons to Prudential Reality,

24   so — the Legal Department.

25           THE COURT:  To what?

1        MR. ATTRIDGE:  Oh, he — he is attempting to get

2   coverage through his employer because of the allegations of the

3   fiduciary — breach of the fiduciary duty, there might be an

4   obligation of his former employer under the Labor Code to pick

5   up a defense for him.  In other words, get him a lawyer.  So —

6        MR. FILLERUP:  I think that's —

7        THE COURT:  Okay.

8        MR. FILLERUP:  — that's a different question from

9   getting documents.

10       MR. ATTRIDGE:  Yeah, that's —

11       THE COURT:  That's a different questions from

12  producing documents from a witness.

13       MR. ATTRIDGE:  Yeah.  I know, that's —

14       THE COURT:  Okay.  Well, it sounds like that's just

15  about ready.  Let's just make them the same day.

16       MR. ATTRIDGE:  Okay.

17       THE COURT:  In other words, we don't even know — we'll

18  just note it in the order in the record here that you stipulate

19  that the 14th is good rather than the 13th.

20       MR. FILLERUP:  Okay.

21       THE COURT:  Okay?

22       MR. FILLERUP:  And then shall I — with respect to the

23  motion to compel, shall I upload an order?  I will submit a

24  proposed order to Mr. Attridge and then —

25       THE COURT:  Yeah, why don't you do that.  And then

1   just put the 14th in there for both of them.

2          MR. FILLERUP:  All right.  And so —

3          THE COURT:  And you can pick them up, you can pick up

4   these boxes any time — any time you want.  Obviously I've

5   thought of, by making the response date the 14th, that you will

6   not pick them up until Monday.  That's at your convenience.

7          MR. ATTRIDGE:  Yes.

8          THE COURT:  That's for your convenience, okay.

9          MR. FILLERUP:  And then the Court will be preparing

10  the order with respect to the motion to stay —

11         THE COURT:  I will do the order on the stay, yes.

12         MR. FILLERUP:  Okay.

13         THE COURT:  Right.  All right.

14         Now — and we — do we have any other trial schedule

15  set; have we done that already?

16         MR. FILLERUP:  No, we don't have a trial date set.

17         THE COURT:  At some point we need to set a trial date.

18  Are you — do you need to do — do you need to see a little bit

19  more of what you get first?

20         MR. FILLERUP:  Well, yes.  I haven't received any

21  documents yet, so I would like to get documents and some

22  discovery responses before we set a trial date.  It may be a

23  good idea today to set a status conference.

24         THE COURT:  A status conference, yeah.  And then —

25         MR. ATTRIDGE:  Actually an attorney named Bertram

*Motion to Compel in the Adversary*                                    31

1  Schafer (phonetic) has contacted me and will accept service of

2  process on behalf of Mr. Koopman.  I have third-party complaint,

3  so we —

4          THE COURT:  I don't remember who Mr. Koopman is.  I'm

5  sorry.

6          MR. ATTRIDGE:  Mr. Koopman is the old fellow who —

7          THE COURT:  Oh, yeah.

8          MR. ATTRIDGE:  — approached the bench a few times.  He

9  is the holder of one of the seconds and we have I'll either a

10 crosscomplaint or a third-party complaint against him.  And so

11 his lawyer would have to be at that.  I'll take the laboring oar

12 and tell the guy when that is.

13         THE COURT:  Well, has he been served yet?

14         MR. ATTRIDGE:  No.  He has agreed to accept service.

15 I just have to lick a stamp and send it to him.

16         THE COURT:  Okay.  I think what you need to do then,

17 let's just set a date.  And I will issue an order on that.  And

18 you can just serve him with a copy of the order.

19         MR. ATTRIDGE:  Sure.

20         THE COURT:  It'll be — it'll be in the docket.

21         Now when she we do this?  Should it be very early in

22 the New Year or do you want to try to do it like on the 21st?

23         MR. FILLERUP:  I think it should be some time in

24 January, early January.

25         THE COURT:  Okay.  Now I have — can I see the

1    schedule?  I have a trial that's starting — it's going to take

2    most of the first two weeks.  And I've even cleared the — which

3    case is this, by the way?

4        (The Court and Clerk confer off record.)

5            MR. FILLERUP:  That's my case on January 3.

6            THE COURT:  Is this the fraudulent conveyance?

7            MR. FILLERUP:  No.  It's — it's a claim by — by some

8    of the individuals who were allegedly defrauded by the debtor,

9    so —

10            THE COURT:  So this is — you're disputing a claim?

11            MR. FILLERUP:  Correct.  It's —

12            THE COURT:  Okay.

13            MR. FILLERUP:  It's an objection to a proof of claim.

14            THE COURT:  Okay.

15            MR. FILLERUP:  And I had settled one of those similar

16   claims made by claimants by the name of Shoop (phonetic).  And

17   this claim is by a claimant by the name of Scott.

18            THE COURT:  Okay.

19            MR. FILLERUP:  And —

20            THE COURT:  The point is I'm just doing that

21   Wednesday, Thursday, and Friday of the first week.  So —

22            MR. FILLERUP:  And I'm in the process of trying to

23   negotiate a settlement.

24            THE COURT:  Okay.

25            MR. FILLERUP:  And you may recall that that Shoop

1  claim we were able to settle.  They have the same counsel.

2           THE COURT:  Okay.

3           MR. FILLERUP:  Shoop and Scott have the same counsel

4  and I'm trying to settle that.

5           THE COURT:  You — okay.  You may or may not settle it.

6  I am not doing anything except that trial up through the, I

7  guess it's, the 4th.  I'm doing — I have everything cleared for

8  Wednesday, Thursday, and Friday, the 2nd, 3rd, and 4th.  But I

9  am having status conferences, things on Monday, the 7th, and on

10  Friday, the 11th.  So I'm only trying to tell you what days are

11  available.  And those are the first days available in January.

12           MR. FILLERUP:  January 7 is better for me.

13           MR. ATTRIDGE:  They're equally fine.

14           THE COURT:  Okay.  So let's put that on at, say,

15  11:00, okay?

16           MR. FILLERUP:  11:00's fine.

17           THE COURT:  At eleven o'clock.  And, again, I will

18  issue a status conference order.  So you're going to do an

19  amended order regarding the motion to compel.  I will do the

20  order regarding the stay.  And I will just do a status

21  conference order, but basically it's just going to stay there's

22  a status conference on this date.  One of the reasons I'm doing

23  it in a written order is so if you wind up serving a third-party

24  complaint on Mr. Koopman, you can just forward that order and

25  let them know about that order so that they come that day also.

*Motion to Compel in the Adversary*                                                    34

1    I assume that you will serve before then?

2                MR. ATTRIDGE:  Yes.

3                THE COURT:  Okay.

4                MR. ATTRIDGE:  There's one other — I'm going to filing

5    a motion for relief from stay because Ms. Hewlett is a

6    co-defendant in a lawsuit filed against Mrs. Ng by a tenant,

7    Martin Yee.  The superior court —

8                THE COURT:  Co-defendant, okay.

9                MR. ATTRIDGE:  Okay?  One of the tenants sued both

10   Mrs. Ng and Mrs. Hewlett for treating him bad — badly, okay.

11   The superior court takes the position that the automatic stay

12   does not apply insofar as it prevents the Court from Mr. Yee

13   pursuing his suit against Ms. Hewlett.  Even though she's a

14   co-defendant Mrs. Ng doesn't have to show up because of the

15   stay, but it doesn't have any effect on the overall thing.  So

16   what I would need is — is relief from it so we can file a

17   crosscomplaint against Mrs. Ng.  In order to have that all the,

18   you know, indispensable parties present at that trial, it's —

19               THE COURT:  When was the action filed?

20               MR. ATTRIDGE:  Oh, and I'm not counsel of record in

21   that case either.

22               MS. HEWLETT:  November of '06.

23               MR. ATTRIDGE:  November of '06.

24               THE COURT:  Ah.  Okay, well, there are all sorts of

25   various ways to think about that.  As I recall, — I don't know

1   really — the plaintiff sued both of them.

2           MR. ATTRIDGE:  The plaintiff sued both of them.  They

3   are co-defendants.

4           THE COURT:  Okay.

5           MR. FILLERUP:  This is apparently a current tenant at

6   1385 Clay.

7           THE COURT:  Uh-huh.

8           MR. FILLERUP:  And my understanding is there's an

9   insurance company defending the case.

10          MS. HEWLETT:  (Indecipherable.)

11          THE COURT:  For the debtor?

12          MR. SIERRA:  No, the insurance company doesn't take

13  care.  Refused.

14          THE COURT:  Okay.  Well, you'll have to — you file

15  your motion.  You'll have to look into this.  There's all sorts

16  of different ways of dealings with it.  It may be covered by —

17  the defense may be covered by insurance.  I mean it'd just be a

18  claim.

19          MR. ATTRIDGE:  The defense of Ng is covered by

20  insurance.  They're refusing to indemnify her, even though she

21  paid the premiums —

22          THE COURT:  Well, but if the defense is — of Ms. Ng is

23  covered by insurance, then the Trustee might stipulate to relief

24  from stay to allow the claim to be liquidated.

25          MR. FILLERUP:  This is the first that we've heard of

1   this claim, so —

2            THE COURT:  Yeah.  I know.  They need to look into it.

3   The point is their — the point is that file your motion.  There

4   are lots of things that can be done to enable this to were

5   properly, okay, one of which is the estate's interest in this is

6   making sure that the claims are — against the estate are, one,

7   defended and, two, defended in a way that is relatively

8   economical for the estate.

9            If the defense is covered by insurance, then it may be

10  appropriate to just allow the state court to liquidate it, but

11  they need to look into the situation.  So you file your motion,

12  and they'll respond.

13           MR. FILLERUP:  Okay.

14           THE COURT:  But I understand what you're getting at.

15           Okay.  And it may — it may — what I was looking at is

16  I'm trying to remember whether...  Well, let's just deal with it

17  that way.  I mean there's — it might conceivably be removable,

18  too.  That's all I'm just generally —

19           MR. ATTRIDGE:  Removable to here?

20           THE COURT:  Yeah, because it's in part a claim against

21  the debtor.

22           MR. ATTRIDGE:  Even though it's a year old?

23           THE COURT:  Well, that's the question.  I think

24  there's — there may be a provision in there to the extent that

25  when relief from stay is granted, or something like that — I

1    can't remember how the timing works for the removal.

2           In any case, file your motion; they'll respond, okay?

3           MR. ATTRIDGE:  Okay.  So —

4           MR. FILLERUP:  Thank you.

5           THE COURT:  I don't think that would be the best way

6    to deal with it.  I think if their insurance is covering it,

7    that would be the best way to deal with it.

8           Okay.  All right.

9           THE CLERK:  All rise.

10       (The hearing was adjourned at 11:07 a.m.)

11                          —o0o—

12

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California            )
                               )    SS.
County of San Joaquin          )


        I, Susan Palmer, certify that the foregoing is a true
and correct transcript, to the best of my ability, of the above
pages, of the digital recording provided to me by the United
States Bankruptcy Court, Northern District of California, of the
proceedings taken on the date and time previously stated in the
above matter.

        I further certify that I am not a party to nor in any
way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber
by the American Association of Electronic Reporters and
Transcribers, Certificate No. 00124.  Palmer Reporting Services
is approved by the Administrative Office of the United States
Courts to officially prepare transcripts for the U.S. District
and Bankruptcy Courts.


                              Susan Palmer
                              Palmer Reporting Services

                              Dated December 12, 2007